IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. 23-cr-12 (MN) |
| SAMUEL BARNES | ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM ORDER**

At Wilmington, this 4th day of August 2023:

On April 11, 2023, Defendant Samuel Barnes ("Defendant" or "Barnes") submitted a Motion to Suppress Evidence. (D.I. 37). The Government responded on May 19, 2023. (D.I. 40). Defendant replied on June 7, 2023. (D.I. 43). On July 6, 2023, the Court conducted a hearing regarding the issues raised. (*See* D.I. 44). The Court has reviewed the filings and arguments presented. For the reasons set forth in this order, Defendant's Motion to Suppress is DENIED.

**I.    BACKGROUND**

In January 2022, five search warrants were issued as part of an investigation related to an individual named Floyd Tolbert ("Tolbert"), including one for Defendant's address, 801 W. 5th Street, Apartment D, Wilmington, Delaware ("Apartment D"). The caption of the search warrant and application included Apartment D's address, however Tolbert's name appeared in the caption and the "Specific Description of Premises and/or Place(s) and/or Vehicle(s) and/or Person(s) to be Searched" described 1201 Maple Street, another address associated with Tolbert.

The search warrant and application were supported by a 14-page, single-spaced affidavit authored by a Delaware State Police Detective and a Wilmington Police Detective assigned to the Federal Bureau of Investigation ("FBI") Violent Crimes Task Force. The affidavit describes the

1

investigation of Tolbert relating to the sale of crack cocaine in Wilmington and the involvement of two past-proven reliable confidential informants (CI-1 and CI-2).[1] The investigation began with information obtained from CI-1 who informed investigators that an individual, later identified as Tolbert, was selling crack cocaine in Wilmington. (D.I. 41 ¶ 5). CI-2 independently corroborated this information. (D.I. 41 ¶ 7).

Agents linked Tolbert to several addresses, including 1201 Maple Street in Wilmington and Apartment D.[2] In November 2021, surveillance of the 1201 Maple Street residence was frequently conducted. (D.I. 41 ¶ 6). On one such occasion, surveillance units followed Tolbert to the area of the 800 block of W. 5th Street, where he was seen loitering in the parking lot of the 801 W. 5th Street townhomes. *Id.* On November 14, 2021, Tolbert's vehicle was involved in a hit and run accident on the 800 block of W. 5th Street. (D.I. 41 ¶ 9). In early December 2021, investigators, with the cooperation of CI-2, conducted a controlled purchase of cocaine from Tolbert. (D.I. 41 ¶ 12). Following the controlled purchase, Tolbert traveled to 801 W. 5th Street, parked in the area of the townhomes, and briefly entered and exited a townhome.[3] *Id.*

---

[1] The Court is not persuaded by Defendant's allegations that the affidavit lacked specific evidence regarding the informants' reliability. (D.I. 37 at 10, 13). The affidavit describes the informants' involvement in past investigations, which included providing information that was independently corroborated (CI-1) and participating in controlled purchases (CI-2), as was the case here as well. (D.I. 41 ¶¶ 5, 7). The investigators also independently corroborated the information obtained from the informants. *Illinois v. Gates*, 462 U.S. 213, 241-42 (1983) ("corroboration of details of an informant's tip by independent police work" may provide the substantial basis required for a probable cause determination).

[2] The affiants attested that, based on their training and experience, drug dealers often use several locations to store and distribute illicit drugs. (D.I. 41 ¶ 31).

[3] During the July 6 hearing, the Government asserted that it is common for drug dealers to enter stash locations briefly during drug sales to get more drugs or drop off money.

On December 9, 2021, Tolbert was again observed in the area of 801 W. 5th Street, specifically in the area of Apartment D. (D.I. 41 ¶ 15). Tolbert was seen briefly entering and exiting the passenger side of a vehicle, which the affiants identified as behavior consistent with a hand-to-hand drug transaction. *Id.* In addition, several individuals were observed entering Apartment D empty-handed, remaining inside for a brief period, and exiting with black plastic bags that appeared to be full. (D.I. 41 ¶ 16). The affiants noted that this behavior (heavy foot traffic in and out of the same residence and the short length of visits) was indicative of drug transactions occurring in the residence. *Id.*

In mid-December, agents organized a second controlled purchase of cocaine from Tolbert.[4] (D.I. 41 ¶ 18). Prior to the controlled purchase, Tolbert was surveilled driving a vehicle and parking in the area of 801 W. 5th Street. *Id.* He was then observed exiting Apartment D a short time later clenching an item in his pants pocket. *Id.* Tolbert was continuously followed as he traveled from Apartment D to the location of the second controlled purchase. *Id.* After the sale, Tolbert returned to the area of 801 W. 5th Street and entered Apartment D. *Id.* During the last two weeks of December, CI-2 informed investigators that Tolbert had advised that he was "heavy with fetty," which the affiants understood to mean that he was in possession of a large quantity of fentanyl. (D.I. 41 ¶ 21).

On December 21, using electronic monitoring, Tolbert's vehicle was observed traveling from where it was parked, the 300 block of West 2nd Street in Wilmington, to the area of 801 W. 5th Street, where it stopped for a brief period, before traveling to and stopping briefly at 1201 Maple Street, and traveling back to 2nd Street. (D.I. 41 ¶ 20). That same day, while conducting

---

[4] Agents organized five controlled purchases of cocaine from Tolbert during the investigation. Tolbert was observed in the area of Apartment D following the first purchase and before and after the second. Those purchases are discussed here.

3

surveillance in the area of 801 W. 5th Street, law enforcement officers observed a black male exit the front door of Apartment D. (D.I. 41 ¶ 23). This individual was observed clenching an object in his pants pocket, giving that object to the driver of a vehicle, and returning to and entering Apartment D. *Id.* In addition to Tolbert's activity in and around Apartment D, further investigation revealed that Tolbert's girlfriend's sister resided at Apartment D. (D.I. 41 ¶ 31).

Through the use of confidential informants, the affiants knew Tolbert to be in possession of a firearm. (D.I. 41 ¶ 8). The affiants also noted that Tolbert was a suspect in a 2006 shooting incident near 499 N. Madison Street, which is in the area of Apartment D. *Id.*

A search warrant was issued for Apartment D on January 17, 2022, and executed the next day, January 18, 2022.[5] While executing the warrant, Officers found Defendant and others inside of Apartment D, along with a gun, crack cocaine and other items. After being read his rights, Defendant admitted the gun and drugs were his. He now seeks to suppress this physical evidence as well as his inculpatory statements. (D.I. 37 at 1-2, 5-6).

## II. LEGAL STANDARD

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. Any evidence obtained as a result of an unreasonable search or seizure "must be suppressed as 'fruit of the poisonous tree.'" *United States v. Bey*, 911 F.3d 139, 144 (3d Cir. 2018) (quoting *Unites States v. Brown*, 448 F.3d 239, 244 (3d Cir. 2006)). "Generally, for a search or seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based upon probable cause." *Id.* at 144-145. The magistrate tasked with determining whether probable cause exists to issue a warrant must "make a practical commonsense decision whether, given all

---

[5] Five search warrants, including those for Apartment D and 1201 Maple Street, were executed as part of the investigation of Tolbert. (D.I. 37 at 5 n.3; D.I. 40, Exs. A, C).

the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Put another way, a "nexus" must exist between the place to be searched and the alleged crimes. *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010).

A court tasked with reviewing a magistrate's determination of probable cause pays great deference to that determination. *Gates*, 462 U.S. at 236. "The role of a reviewing court is not to decide probable cause *de novo*, but to determine whether 'the magistrate had a substantial basis for concluding that probable cause existed.'" *Stearn*, 597 F.3d at 554 (quoting *Gates*, 462 U.S. at 238). "If a substantial basis exists to support the magistrate's probable cause finding, [the Court] must uphold that finding even if a 'different magistrate judge might have found the affidavit insufficient to support a warrant.'" *Id.* (quoting *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993)). In conducting its review, the Court confines itself "to the facts that were before the magistrate judge, i.e., the affidavit, and do[es] not consider information from other portions of the record." *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993). Considering "the Fourth Amendment's strong preference for searches conducted pursuant to a warrant[,] 'courts should not invalidate . . . warrants by interpreting affidavits in a hypertechnical, rather than a commonsense, manner.'" *Gates*, 462 U.S. at 236 (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)). Moreover, "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Id.* at 237 n.10.

### III.  DISCUSSION

#### A.  Nexus Between Drug Dealing and Apartment D

Defendant contends that the affidavit did not set forth a sufficient nexus between the alleged criminal activity addressed in the affidavit and his residence to support a probable cause

finding. (D.I. 37 at 7-8; D.I. 43 at 4-5). In determining whether a sufficient nexus exists to justify the search of a home, "a magistrate judge may infer probable cause from 'the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide . . . evidence.'" *Stearn*, 597 F.3d at 558 (quoting *Jones*, 994 F.2d at 1056)). "[D]irect evidence linking the residence to criminal activity is not required to establish probable cause." *United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002). "Instead, probable cause to search can be based on an accumulation of circumstantial evidence that together indicates a fair probability of the presence of contraband at the home of the arrested." *Id.*

In this case, the affidavit provided the magistrate judge with a substantial basis to conclude that instrumentalities associated with Tolbert's alleged drug dealing would be found in Apartment D. Although Tolbert did not reside at Apartment D, the affidavit disclosed observations that placed him in or around the residence on multiple occasions and of activities consistent with drug dealing. Indeed, searches of other residences separate and apart from a drug dealer's primary residence are appropriate where there is evidence that the property is being used for drug dealing, such as for purposes of serving as a stash house. *See United States v. Alexander*, 54 F.4th 162, 173 (3d Cir. 2022). It is also not dispositive that Defendant was not listed by name on the search warrant or identified in the affidavit. Because the warrant at issue was a search warrant, not an arrest warrant, probable cause must exist for the place to be searched, not the owner or occupier of the residence. *See Conley*, 4 F.3d at 1206-07.

Agents observed Tolbert entering or exiting Apartment D and traveling to and from the area throughout November and December 2021.[6] During these visits, Tolbert was seen loitering in the area and on one occasion, briefly entering and exiting the passenger side of a vehicle, which

---

6  Tolbert was also a suspect in a shooting incident that took place in the area in 2006.

the affiants identified as behavior consistent with a hand-to-hand drug transaction. That same day, other individuals were observed entering Apartment D empty-handed, remaining inside for a brief period, and exiting with black plastic bags that appeared to be full, also identified as consistent with drug activity. On another occasion, Tolbert's vehicle was observed traveling to the area of Apartment D, where it stopped for a brief period, before traveling to and stopping briefly at other locations. That same day, law enforcement officers observed a black male exit the front door of Apartment D, clenching an object in his pants pocket, giving that object to the driver of a vehicle, and returning to and entering Apartment D.

The affidavit also describes five controlled purchases of cocaine from Tolbert. Surveillance surrounding two of the controlled purchases placed him in the area of Apartment D. Following the first controlled purchase, Tolbert traveled to the area of Apartment D, parked, and briefly entered and exited a townhome. Prior to the second controlled purchase, Tolbert again parked in the area and was observed exiting Apartment D a short time later clenching an item in his pants pocket. He was continuously followed as he traveled from Apartment D to the location of the second controlled purchase. After the sale, Tolbert returned to the area of Apartment D and entered the residence.

In sum, the affidavit provided a substantial basis to support the magistrate's probable cause finding that evidence related to Tolbert's alleged drug dealing would be stored at Defendant's residence.[7] Thus, this Court must uphold that finding. *See Stearn*, 597 F.3d at 554.

---

[7] There are currently no pending criminal cases against Tolbert in the United States District Court for the District of Delaware.

### B. Good Faith Exception and the Exclusionary Rule

Even if there were not a substantial basis for finding probable cause, the evidence obtained through the search would be admissible under the good faith exception to the exclusionary rule. *See United States v. Leon*, 468 U.S. 897 (1984). The "extreme sanction of exclusion" is inappropriate where "the offending officers acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment." *Id.* at 916-18. Furthermore, "[t]he mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception." *United States v. Hodge*, 246 F.3d 301, 307-08 (3d Cir. 2001).

There are four situations in which reliance on a warrant is unreasonable and does not trigger the good faith exception:

> (1) the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit; (2) the magistrate abandoned his judicial role and failed to perform his neutral and detached function; (3) the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*United States v. Werdene*, 883 F.3d 204, 217 (3d Cir. 2018). Defendant argues that the third and fourth situations apply here. (D.I. 37 at 13). The threshold for establishing the third exception is high and Defendant has failed to make such a showing. *See United States v. Pavulak*, 700 F.3d 651, 664 (3d Cir. 2012) (citing *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012). The affidavit in this case is not a "bare bones" affidavit, *id.*, but rather is based on information obtained from two past-proven reliable informants, which was further substantiated by an investigation that included considerable surveillance linking Tolbert, and his alleged drug dealing operation, to Apartment D. Having found that the magistrate had a substantial basis for concluding that probable cause existed for the reasons discussed above, the third situation is inapplicable.

8

Defendant also argues that the warrant was so facially deficient that it failed to particularize the place to be searched. (D.I. 37 at 13). In support of this argument, Defendant relies on the erroneous description included on the search warrant application. Instead of a description of Apartment D, the search warrant application includes a description of 1201 Maple Street, another address associated with Tolbert and for which a separate search warrant was issued. Following Defendant's reasoning, this error made the warrant so facially deficient as to necessitate a finding that the executing officers could not have reasonably presumed it to be valid. *See Leon*, 468 U.S. at 923. The Court cannot reach this conclusion.

The Third Circuit recently found that officers relied on the facial validity of a warrant in good faith, even though the warrant request included the wrong street number. *United States v. Carey*, 72 F.4th 521, 525 n.1 (3d Cir. 2023) (finding that the error was "inadvertent and legally insignificant"). Here, although the description of the place to be searched was incorrect, this error seems similarly inadvertent and does not render the search warrant facially deficient.[8] The search warrant itself, the application, and the affidavit all reference Apartment D. Indeed, the address of Apartment D is the only address on the face of the search warrant. In addition, a separate warrant for 1201 Maple Street was issued and executed at the same time as the warrant at issue here. Thus, the executing officers could have reasonably presumed that both residences were covered by the warrants. Considering these circumstances, the remedy of suppression would not "further the purposes of the exclusionary rule," *Leon*, 468 U.S. at 918, and would be inappropriate here.

---

[8] This result should not be perceived as an endorsement of imprecision in the warrant application process.

9

## IV. CONCLUSION

The search of Apartment D was conducted pursuant to a valid search warrant issued by a magistrate. Based on the affidavit submitted with the search warrant application, the magistrate had a substantial basis for concluding that probable cause existed to search Apartment D, and this Court will not disturb the magistrate's finding.

THEREFORE, for the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion to Suppress (D.I. 37) is DENIED.

_____<br>
The Honorable Maryellen Noreika<br>
United States District Judge